UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SPECIAL TOUCH OF NORTH AL, L.L.C.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 24-493** |
| **DESIGN MANAGEMENT GROUP, LLC** | **SECTION: "O" (4)** |

## ORDER

Before the Court is Plaintiff's **Motion for Contempt (R. Doc. 28)**, seeking to hold Defendant in civil contempt for failure to comply with the Court's orders setting a Judgment Debtor Exam in this matter. See R. Doc. 17. See also R. Doc. 25. Plaintiff also seeks an award of attorneys' fees and costs. R. Doc. 28 at 1. The Motion is Opposed. R. Doc. 32.

**I. Introduction**

   **A. Factual Background**

This litigation arises from failure to pay an invoice for Hurricane-Ida related repairs. R. Doc. 1-2 at 1. Plaintiff Special Touch of North Al, L.L.C. ("Special Touch") alleges that on September 15, 2021, Defendant Design Management Group, LLC ("DMG") hired them to perform dewatering, mitigation, and other related work on property that was damaged in Hurricane Ida. *Id.* Special Touch alleges that DMG was acting as the contractor for this work, and that Special Touch acted as a subcontractor for the work. *Id.* at 2. Special Touch alleges that they performed the contracted work and sent an invoice to DMG for $93,783.75, on October 16, 2021, which has not been paid to date. *Id.*

Special Touch therefore filed a demand for Arbitration with the American Arbitration Association on February 14, 2023. R. Doc. 1-2 at 3. DMG consented to arbitration, and an Arbitration Award against DMG was issued on January 25, 2024, which awarded $194,911.60 to

Special Touch. *Id.* Special Touch alleges that DMG has not paid the Arbitration Award to date, and therefore filed a Motion to Confirm Arbitration Award and Enter Judgment on Award, pursuant to the Federal Arbitration Act. *Id.* at 3. Special Touch also filed a Motion for Judgment Debtor Exam, requesting that the Court compel DMG to comply with a judgment debtor examination in this matter. R. Doc. 13.

On February 7, 2025, the Court issued a judgment adopting the parties' Arbitration Award. R. Doc. 16. The Court then granted Special Touch's request to compel DMG to comply with a judgment debtor examination, setting an examination date of March 12, 2024. R. Doc. 17. DMG subsequently requested that the Court continue the examination because their counsel would be out of the country until March 17, 2025. R. Doc. 22. The Court granted DMG's request to continue and reset the judgment debtor examination for March 19, 2025. R. Doc. 25.

However, DMG did not appear for the March 19, 2025, judgment debtor examination. R. Doc. 26. Instead, their counsel appeared and asserted that DMG's corporate representative, Ryan McCroskey, was under house arrest in Florida pursuant to an unrelated criminal proceeding and was unable to appear or provide the requested financial documents. DMG's counsel asserted that they were not informed about their client's house arrest until March 18, 2025, the day before the scheduled examination. DMG's counsel further asserted that DMG's former member and manager, Aren McCroskey, was no longer married to Ryan, was no longer involved with DMG, and had no access to DMG's financial records. The Court ordered DMG's counsel to call their clients and inform them that they were required to immediately acquire the required financial documents and appear for the examination, even remotely if necessary. However, DMG's counsel was ultimately unable to acquire the financial documents or present a corporate representative for examination on March 19, 2025.

### B. Motion for Contempt

In the subject Motion, Special Touch requests that the Court hold DMG in civil contempt for their failure to comply with the Court's orders (R. Doc. 17 and 25) to appear for a judgment debtor examination and provide DMG's financial records. R. Doc. 28 at 1. Special Touch asserts that DMG's counsel previously advised them on December 30, 2024, that DMG would not produce a representative to appear for a judgment debtor examination, and that DMG intentionally followed through with this statement when it violated the Court's orders on March 19, 2025. *Id.* at 2. Special Touch further asserts that DMG has provided no explanation for its failure to produce financial documents, other than merely asserting that their accountant was busy. *Id.* at 3.

Special Touch also contends that DMG's counsel made inaccurate and misleading statements to the Court regarding the scope of Ryan McCroskey's house arrest order and Aren McCroskey knowledge of DMG's business. R. Doc. 28-5 at 4. Special Touch asserts that Ryan McCroskey's house arrest order was issued on November 25, 2024, long before the Court's orders were issued, and expressly stated that he could leave his house for "court hearings" and "appointments with his attorneys." *Id.* at 3. Therefore, Special Touch asserts that his house arrest order was an invalid basis for DMG's failure to produce a representative on March 19, 2025. *Id*. Special Touch further asserts that if DMG's counsel was sincerely concerned that Ryan McCroskey's appearance would violate the terms of his house arrest order, he could have reached out to the Hillsborough County state court that issued the order rather than simply raising it as an excuse at this Court's hearing. *Id.* at 6.

Regarding Aren McCroskey, Special Touch asserts that DMG's public filings with the Louisiana Secretary of State establish that she was a member and manager of DMG from October 25, 2016, to November 22, 2023. R. Doc. 28-5 at 3-4. See R. Doc. 28-2. Special Touch further

3

asserts that Aren McCroskey was reinstated as DMG's member/manager from January 10, 2024, through December 19, 2024. *Id*. Therefore, Special Touch asserts that Aren McCroskey has knowledge of DMG's business and that DMG could have produced her as a representative on March 19, 2025, if Ryan McCroskey could not appear. *Id.* at 5-6.

Special Touch therefore contends that DMG had no valid basis for violating the Court's orders, and requests that the Court award the costs and attorneys' fees they incurred in connection with the judgment debtor exam and subject Motion. R. Doc. 28-5 at 6. Special Touch also renews its request that the Court compel DMG to produce the financial records identified in its February 21, 2025, order and designate a corporate representative to appear for a judgment debtor examination within seven days, or a reasonable amount of time thereafter. *Id.* at 6-7.

On May 6, 2025, DMG was granted leave to file an untimely Opposition to the Motion. R. Doc. 21. Therein, DMG contends that civil contempt is not warranted under these circumstances, and that Special Touch mischaracterized the events of the Court's hearing. R. Doc. 32 at 1-3. DMG denies that they attempted to conceal the scope of Ryan McCroskey's house arrest order and asserts that their counsel read directly from order on the record. *Id.* However, DMG does not raise any argument against Special Touch's request for a judgment debtor examination. *Id.* Instead, DMG simply asserts that they require another twenty-one additional days to produce the requested financial records, running from the date "of any ruling to produce the required documentation[.]" *Id.* DMG asserts that this additional time is necessary because they need to coordinate with third-party accountants and consultants to acquire all the requested financial records. *Id.* DMG also requests that the Court permit Ryan McCroskey to appear remotely for the judgment debtor examination, since his house arrest order limits his ability to travel outside the state of Florida. *Id.* at 4.

**II.     Standard of Review**

Under Rule 37, the Court may treat a party's failure to obey an order to provide or permit discovery as contempt of court. FED. R. CIV. P. 37(b)(2)(A)(vii). Rule 37 identifies several potential sanctions, including payment of "the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C). Additionally, the undersigned has authority to enter a non-dispositive order granting attorneys' fees or other non-dispositive sanctions under Federal Rule of Civil Procedure 37(e). See 28 U.S.C. § 636(b). See also *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. 1981) (per curiam) (finding that a magistrate judge has authority to enter a non-dispositive order granting attorneys' fees as a sanction under Federal Rule of Civil Procedure 37).

A party is in contempt when they violate a "definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.*, No. 19-358, 2023 WL 2352830, at *2 (E.D. Tex. Mar. 3, 2023) (Mazzant, A.) (citations omitted). *Cordova v. Louisiana State University Agricultural & Mechanical College Board of Supervisors, et al*, No. 19-1027, 2024 WL 263941, at *2 (W.D. La. Jan. 24, 2024) (Cain, J.). A party seeking an order of civil contempt must establish three elements: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply. *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999). The claimant must prove each of these elements by clear and convincing evidence. *Piggly Wiggly Clarksville, Inc.*, 177 F.3d at 382.

However, judicial contempt should not be used unless a specific aspect of the Court's order has been clearly violated. *G.K. v. D.M.,* No. 21-2242, 2023 WL 2316213, at *3 (E.D. La. Jan. 25, 2023) (Currault, M.J.). A party may also avoid contempt if they produce credible evidence showing that compliance with the court's order is impossible. *Cordova*, No. 19-1027 at *2 (citing *United States v. Sorrells*, 877 F.2d 346, 348 (5th Cir. 1989)).

### III. Analysis

In this case, Special Touch alleges that DMG failed to obey the Court's orders to provide discovery through a judgment debtor examination, and requests that the Court finds them in civil contempt for this failure. R. Doc. 28 at 1. DMG contends that civil contempt is unwarranted, since its failure was justified under the circumstances. See R. Doc. 32. The Court will consider each prong of the civil contempt analysis below. See FED. R. CIV. P. 37(b)(2)(A)(vii). See also *Piggly Wiggly Clarksville, Inc.*, 177 F.3d at 382.

First, the Court issued orders on February 21, 2025, and March 11, 2025. R. Doc. 17. See also R. Doc. 25. Therein, the Court set a judgment debtor examination in this matter on March 12, 2025, and later continued the hearing to March 19, 2025, at DMG's request. *Id.* These orders were clearly in effect in this case and DMG does not deny the existence of the Court's orders. See R. Doc. 32. Therefore, the first prong of the civil contempt analysis is satisfied.

Second, the Court's orders expressly required DMG to appear for a judgment debtor examination and produce specific financial records at the examination, including payroll records, federal and state income tax returns, and bank statements. R. Doc. 17. See also R. Doc. 25. DMG acknowledges in their Opposition that the Court's orders required them to appear for the judgment debtor examination and provide their financial records. See R. Doc. 32. Accordingly, the second prong of the civil contempt analysis is satisfied.

Third, it is undisputed that DMG failed to comply with the Court's orders. The orders required that DMG produce a representative to appear on March 19, 2025, at 11:00 a.m. in the undersigned's courtroom. R. Doc. 17. See also R. Doc. 25. The Court's orders further required that DMG produce specific financial records demonstrating its assets and property. *Id.* DMG failed to provide a representative or any financial records at the March 19, 2025, examination, and does not dispute that it failed to comply with the Court's orders. R. Doc. 32. Instead, DMG contends that its failure was justified since their counsel was unable to acquire financial documents despite multiple requests and was not aware of Ryan McCroskey's house arrest until the day before the examination. *Id.*

Upon review, Ryan McCroskey's house arrest order was issued on November 25, 2024, months before the Court's orders were issued in February and March of 2025. R. Doc. 17. R. Doc. 25. Additionally, the house arrest order specifically states that Ryan McCroskey may leave his home for "court hearings" and "appointments with his attorneys." Therefore, Ryan McCroskey's house arrest order did not render compliance with the Court's order impossible, nor does it explain DMG's failure to provide any financial records at the examination.

Aren McCroskey was also a member and manager of DMG at the time Special Touch performed work for them in 2021. R. Doc. 28-2. DMG's counsel himself electronically signed an annual report for DMG on November 22, 2024, which clearly lists Aren McCroskey as a registered agent, manager, and member of DMG. *Id.* Therefore, his statement to the Court that Aren McCroskey could not be an adequate representative for DMG was inaccurate and misleading.

Additionally, DMG's prior motion to continue the judgment debtor examination simply requested to continue the examination by one week, from March 12 to March 19, 2025, since counsel would be out of the country on until March 17. R. Doc. 22. At no other point did counsel

indicate that an extension of time was necessary to acquire DMG's financial records or address communication difficulties with his clients. These difficulties that DMG's counsel allegedly experiences therefore do not justify DMG's failure to comply with the Court's orders.

Accordingly, the Court finds that Special Touch has satisfied the burden required for a finding of civil contempt by clear and convincing evidence. Court orders were in effect, the orders required specific conduct by DMG, and DMG failed to comply with the Court's orders. Therefore, this Court finds that DMG is in civil contempt for their failure to comply with the Court's February 21, 2025, and March 11, 2025, orders. R. Doc. 17. See also R. Doc. 25.

Upon a finding of civil contempt, the Court has broad discretion to impose judicial sanctions to coerce compliance with its orders and compensate the moving party for any losses they sustained. *Cordova,* No. 19-1027 at *2 (citation omitted). When evaluating the appropriate sanction, the court considers: "(1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order." *Id.* (citation omitted).

Special Touch proposes that the Court award their attorneys' fees incurred in the subject motion and order DMG to comply with the judgment debtor examination. R. Doc. 28-5 at 6-7. The Court finds that these requested sanctions compensate Special Touch for the harm they suffered and coerce DMG to comply with the Court's order. *Cordova,* No. 19-1027 at *2 (citation omitted). The Court also finds that an award of attorneys' fees is appropriate under Rule 37. See FED. R. CIV. P. 37(b)(2)(C). See also *Jolie Design & Décor, Inc. v. BB Frosch, LLC,* No. 17-5052, 2017 WL 6610469, at *2-4 (E.D. La. Dec. 27, 2017) (Roby, M.J.) (granting request for attorneys' fees in a motion for contempt).

The Court therefore grants Special Touch's request for attorneys' fees and orders that DMG appear for a judgment debtor examination in the undersigned's courtroom on July 2, 2025, at 11:00 A.M. The Court denies DMG's request to allow Ryan McCroskey to appear for the examination remotely. DMG shall either coordinate with the Hillsborough County state court that issued Ryan McCroskey's house arrest order to ensure that he may appear in person for the judgment debtor examination, or produce another representative, such as Aren McCroskey, to appear for the examination in person. The Court further orders DMG to produce the financial documents requested by Special Touch at the July 23, 2025, examination, which are outlined below.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiff's **Motion for Contempt (R. Doc. 28)** is **GRANTED.**

**IT FURTHER IS ORDERED** that Plaintiff Special Touch of North Al, L.L.C.'s request for attorney's fees is **GRANTED.**

**IT IS FURTHER ORDERED** that upon issue of this order, Plaintiff Special Touch of North Al, L.L.C. shall file a motion to set reasonable attorneys' fees and costs **no later than fourteen (14) days** from issue of this Order, and any opposition to the motion shall be filed **no later than seven (7) days** from the filing of the motion. Plaintiffs' motion shall include the following: (1) an affidavit attesting to its attorney's education, background, skills, and experience; (2) sufficient evidence of rates charged in similar cases by other local attorneys with similar experience, skill, and reputation and; (3) the documentation required by Local Rule 54.2.

**IT IS FURTHER ORDERED** that a representative of Defendant Design Management Group, LLC, appear on **July 23, 2025, at 11:00 a.m.** in the undersigned United States Magistrate Judge's Courtroom located at 500 Poydras Street, Room B-431, New Orleans, Louisiana to be

examined as a judgment debtor, and that it produce at that time the following books, papers, and documents relating to the nature, value, and exact location of Defendant's current assets and property, and assets and property in which Defendant has had an interest within the last year, including but not limited to:

1. Federal and state income tax returns filed by or on behalf of DMG for the last 10 calendar years, together with the name and address of all persons or entities who participated in the preparation of the returns.

2. Payroll records of DMG for the last 10 calendar years.

3. Any and all acts of sale, deeds, contracts, mortgages, titles, security interests, or other documents by which DMG holds or owns or has any interest in any immovable property in its name or in the names of others for its account, including, but not limited to, all records, acts, instruments, and other documents describing, identifying, or perfecting any transfers of any such property or interest therein, including the identity of the party to whom transferred, the date of transfer and the terms thereof, and also including any appraisals or any other items reflecting an appraised value for any such property.

4. Any and all bank statements, cancelled checks, check stubs, deposit slips, contracts and other records and memoranda in DMG's possession, custody, or control, showing or tending to show all transactions with any bank, banks, homestead, or financial institutions with which DMG did business, alone or jointly with any other person, persons, or entity, or had any signature privileges on for the past ten (10) years regardless of whether the accounts were personal or business accounts.

5. All documents relating to savings accounts, brokerage accounts, bank accounts, financial accounts including the passbook, statements and other records of transactions therein, which DMG has any interest in, alone or jointly with any other person, persons or entity, or has any signature privileges on, regardless of whether the accounts were personal or business accounts.

6. Copies of any and all chattel mortgages on any property owned by DMG.

7. Certificates of all stocks, bonds, or indentures and other securities in any corporation or corporations beneficially held by DMG, either alone or jointly with any other person or entity.

8. All licenses held by or in the name of DMG and all licenses for any businesses owned, fully or partially, by DMG.

9. All original notes, deeds, conveyances, title certificates, mortgages, and security instruments of any kind showing or tending to show the existence of debts owed to DMG.

10. All writings or financial records in DMG's possession or custody, or subject to DMG's control, showing or tending to show all monies due DMG, together with any records DMG may have showing or tending to show all persons who owe DMG money, together with an identification of all items referred to therein.

11. All documents relating to any and all interests which DMG have or have had in any corporation, partnership, joint venture or trust, including DMG itself, together with an identification of all property which the corporation, partnership, joint venture or trust has any interest of any kind in.

12. All records relating to and identifying all automobiles, motor vehicles, trucks, aircraft and boats owned, rented, leased and otherwise used by individuals held in the name of or on behalf of or for DMG and, if not owned by DMG, identifying the owner thereof and under what arrangement DMG used the automobile, motor vehicle, truck, aircraft or boat.

13. All records relating to all safety deposit boxes or other depositories for securities, cash or other valuables, rented or otherwise, used by DMG alone or jointly with any other person or persons, together with all agreements relating thereto.

14. All documents reflecting and identifying all property owned by DMG either jointly, individually or otherwise, together with the location of each such item and its value, including all items of equipment, art, jewelry, collectors items, books, royalties, patents, copyrights and inventions.

15. All mortgages, pledges, security agreements, financing statements and other documents in any way reflecting any security interest, mortgage, pledge, hypothecation or encumbrance of any kind upon any property owned by DMG individually or jointly and in any way evidencing any debt relating thereto.

16. All documents identifying every securities brokerage account DMG has or has had, either individually or jointly with any other person or entity and the name and address of the brokerage firm used and the name and address of the salesman for the account.

17. All documents relating in any way to and identifying any property for which DMG or someone on its behalf has given any consideration for and which is being held in the name of some other person, corporation or other form of entity.

18. All documents which identify all C.P.A.'s, accountants and bookkeepers used by DMG and used by every corporation, partnership, joint venture, trust and other entity which DMG is or has been associated or affiliated with in any way.

11

19. All judgments which have been entered in DMG's favor or against DMG that DMG has not satisfied in full.

20. All documents in any way relating to any insurance claims made by or on DMG's behalf and reflecting the status of the claims.

21. All documents reflecting any leases or other rental agreements for immovable or movable property which DMG has executed as either lessor or lessee.

22. Any and all documents, including, but not limited to ledgers, financial reports, books and accounts representing, reporting, or summarizing any and all of DMG's financial activity for a period of ten (10) years prior to the date of the judgment debtor examination, including stock ownership, disbursements, membership interests, salaries, accounts due and income.

23. All documents reflecting any interest of DMG in any employee or self-employed benefit plan (e.g., pension plan, profit-sharing plan, Keogh Plan, individual retirement account, etc.).

24. All documents reflecting any interest of DMG in oil or mineral rights.

25. All documents reflecting any interest of DMG in any club or organization.

26. All documents relating to the receipt of income of DMG from accounts receivable or other sources in the near future.

27. All documents relating to any legal proceedings in which DMG is attempting to recover money or anything of value and, if applicable, all documents reflecting the disposition of such matters.

28. All evidence of any assets of whatever kind presently in the possession of DMG or of which it expects to come into possession within the next two years.

29. All agreements, Articles of lncorporation, Articles of Organization, By-laws, member agreements, operating agreements, shareholder agreements, stock certificates or other documents relating to DMG's interest in any corporation, limited liability company, limited liability partnership, general partnership, limited partnership, trust, or any other type of business entity.

**IT IS FURTHER ORDERED** that the parties are to arrange for the attendance of a Court Reporter at the examination.

New Orleans, Louisiana, this 24th day of June 2025.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**